UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**Erie Insurance Property and Casualty Co.**            **Plaintiff**

v.                                                    No. 3:19-cv-332-BJB

**Moore, et al.**                                        **Defendants**

\* \* \* \* \*

### OPINION AND ORDER

This Court lacks jurisdiction under Article III of the U.S. Constitution to issue the declaratory judgment that Erie Insurance seeks against a culpable-but-absent driver, his passenger, a *pro se* truck owner, and four victims of a tragic wreck. The absent defendant, Shawn Welsh, led police on a deadly high-speed chase in a truck that he did not own and that Erie insured. During that chase, Welsh hit a car containing four teenagers—two of whom died. Welsh, Laura Neville (a passenger in the car with Welsh), Mary Ann Moore (the owner of the truck that Welsh was driving), and the other four passenger-victims (two through their estates or next friends) are defendants in this declaratory-judgment suit. Erie asks the Court to rule that the terms of the auto and catastrophe policies it issued to Moore do not require Erie to cover any losses caused by the wreck because Welsh lacked permission to drive the truck.

But because the four Victim-Defendants have told Erie they won't seek recovery against it based on the policies, and because Erie itself is less concerned with its exposure to the victims than to Welsh (who has been convicted of receiving stolen property and hasn't appeared in this lawsuit), this case presents no "real and substantial controversy" and falls outside this Court's jurisdiction. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937). Erie seeks "an opinion advising what the law would be upon a hypothetical state of facts," which this Court may not offer. *Id.* at 241. Therefore the Court grants the Victim-Defendants' motion to dismiss Erie's complaint for lack of jurisdiction [DN 35], and would, in the alternative, exercise its discretion under the Declaratory Judgment Act not to decide this suit, consistent with the Defendants' initial motion to dismiss [DNs 15, 21].

A.   **The Underlying Accident and Disputes**

The parties that have appeared in this case have not disputed the core facts surrounding the car wreck at issue. Since no discovery has taken place, the discussion below rests largely on the allegations set forth in the complaint and motions to dismiss.

*1. The High-Speed Chase.* Moore's grandson, Aubrey Moore, reported her 2000 Chevy Silverado pickup truck stolen in Fairmont, Virginia on October 18, 2018. Affidavit of Vehicle Theft [DN 22-2]. Two days later, Welsh and Neville sat in Moore's parked truck in a cul-de-sac in Meade County, Kentucky. Motion to Dismiss [DN 35-1] at 2. When Meade County Sheriff Deputy Brandon Casey approached the truck, Welsh drove away and Casey chased behind. *Id.* Casey pursued Welsh

at high speeds into Hardin County. *Id.* Casey was joined by Officers David Evangelist and Vic Williams with the City of Vine Grove Police Department, as well as Officers Jeremey Davis and Brandon Jones with the City of Radcliff Police Department. *Id.* Those officers and their departments are defendants in the victims' state-court tort suit, discussed below. During the high-speed pursuit, Welsh hit a vehicle driven by Defendant Jacob Barber. Defendants K.E.P., M.M. and C.B. were passengers. *Id.* Jacob Barber and K.E.P. were killed. *Id.* M.M and C.B. were severely and permanently injured. *Id.* at 2–3.

   **2. The State-Court Criminal Actions.** A grand jury in Hardin County (where the chase concluded) indicted Welsh in October 2018 on two counts of murder, two counts of assault in the first degree, possession of a controlled substance, fleeing or evading police, receiving stolen property, operating a motor vehicle under the influence, and being a persistent felony offender. Hardin Circuit Court Unofficial Court Record [DN 15-3]. On October 23, 2019, Welsh went to trial on these charges in Hardin County. Hardin Circuit Court Trial Verdict [DN 36-3]. A few days later the jury found Welsh guilty of, among other things, receiving stolen property. *Id.*[1]

   **3. Insurance Policies.** Moore, the owner of the truck, purchased two policies from Erie: an automobile policy and a personal catastrophe liability policy. [DNs 27-2, 27-3]. The policies provide that Moore, her relatives, or anyone using the vehicle *with her permission* are covered under the policies. Automobile Policy [DN 27-2] at 8, Personal Catastrophe Policy [DN 27-3] at 6.

   **4. State-Court Tort Case.** After Erie filed this lawsuit in federal court, but before the lawsuit substantially progressed, all four of the high schoolers killed or injured in the wreck went to state court and sued the officers and municipalities involved, Welsh, Moore, Kentucky Farm Bureau Mutual Insurance Company, and Erie. *See* Meadows Hardin Circuit Court Complaint [DN 15-7], McMillen Hardin Circuit Court Complaint [DN 15-8], Combs Hardin Circuit Court Complaint [DN 21-1], State Court Complaints [DN 27-5]. The state-court complaints raised various tort claims, as well as a request for a declaratory judgment against Erie under Kentucky law. State Court Complaints at 16, 36, and 57. The state-court plaintiffs asked the Hardin Circuit Court to declare that Erie "provide insurance coverage to Plaintiffs' claims . . . ." *Id.* at 16, 36, 57.

   After a criminal jury found Welsh guilty of receiving stolen property, however, the state plaintiffs agreed to dismiss Erie from the state civil case in late 2019. Notice of State Court Dismissals [DN 26]; Combs, Meadows, McMillen Agreed Orders [DN 27-7]; Petrie (as Guardian and Next Best Friend of C.B.) Agreed Order [DN 26-2]. The dismissals were not with prejudice. *See* Agreed Orders.

**B.   Erie's Request for a Declaratory Judgment that Its Policies Did Not Cover This Crash**

   The lawyer for Meadows, a defendant here, sent a notice of a potential claim [DN 15-5] to Erie on October 20, 2018. McMillen's lawyer did the same [DN 15-6] on December 3, 2018. But as

---

[1] Another grand jury in Meade County (where the chase began) also indicted Welsh in January 2019 for receiving stolen property, fleeing or evading police, wanton endangerment of a police officer, possession of a controlled substance, no operator's license, reckless driving, disregarding a traffic control device, and speeding at least 26 miles per hour above the limit. Meade District Court Unofficial Court Record [DN 15-4]. The outcome or status of that prosecution is not clear from the parties' discussion, and no circumstances specific to the second criminal case appear to bear on the motions to dismiss this civil action.

discussed above, they did not file their state-court civil suit against Erie and the other state-court defendants until August 16, 2019. In the interim, on May 1, 2019, Erie filed a complaint in federal court for declaratory relief under the state and federal declaratory-judgment statues, K.R.S. § 418.040 and 28 U.S.C. § 2201. Erie sued for a declaration of its rights relative to the defendants Moore, Welsh, Neville, Sharon Combs (individually and on behalf of the Estate of Jacob Barber), Karoline Meadows (individually and on behalf of the Estate of K.E.P.), Robin McMillen (individually and as guardian and next friend of M.M., a minor), and John Doe (individually and as guardian and next friend of C.B.). Complaint [DN 1].

Welsh has not appeared in the federal case. Moore appeared *pro se*. And Laura Neville only wrote from jail requesting an attorney and compensation "for the emotional distress" from the lawsuit. [DN 10]. Neville does not appear to be a party in the underlying state-court litigation. *See* State Court Complaints. Neither Welsh nor, as far as the Court is aware, Neville have made a claim for coverage under the policies.

The Victim-Defendants initially moved to dismiss Erie's federal action [DNs 15, 21] on the grounds that the Court should decline to exercise jurisdiction for reasons of efficiency and comity under the discretionary authority afforded by the federal Declaratory Judgment Act. 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration….") (emphasis added). Erie's briefs and the Defendants' opposition largely focused on whether Erie's request would require this court—despite the pending state-court litigation—to find facts and pass judgment on whether Welsh drove the car with or without permission. Motion to Dismiss [DN 15-1] at 11, Response to Motion to Dismiss [DN 22] at 4. The Victim-Defendants contended that the Court should decline to exercise its discretion to hear a declaratory-judgment action that could require the parties to undertake parallel, premature, and potentially inconsistent litigation in federal court while the state-court criminal and civil proceedings played out. Motion to Dismiss [DN 15-1] at 11.

Erie, for its part, saw no conflict between the two court systems because its federal claim was cut and dried: this Court didn't need to find any facts regarding Welsh's permission to drive, both because the Victim-Defendants offered no resistance to Erie's version of the events and also because the Court could take judicial notice (by that time) that Welsh had been convicted of receiving stolen property. Reply to Motion for Summary Judgment [DN 36] at 5. The only work for the Court, Erie maintained, was reading the contract and announcing the (to it) obvious conclusion that if Welsh had in fact stolen the car, he lacked permission to drive it and therefore the terms of Erie's coverage didn't apply. Motion for Summary Judgment [DN 27-1] at 11. The Victim-Defendants countered only with procedural arguments—no record evidence—and did not then (or now) offer any alternative reading of the policy that *would* somehow offer coverage in this situation, assuming the verdict against Welsh isn't overturned.[2] Response to Motion for Summary Judgment [DN 34] at 4–6. Nor is any such

---

[2] The Victim-Defendants argue that factual issues remain, partly because Welsh has appealed his conviction. Arg. Tr. 8:13–25. "[T]he pendency of an appeal," however, "does not destroy the finality of the judgment for the purposes of issue preclusion under Kentucky or Sixth Circuit law." *Maxum Indem. Co. v. Broken Spoke Bar & Grill, LLC*, 420 F. Supp. 3d 617, 627 (W.D. Ky. 2019) (quoting *Houchin v. Allstate Indem. Ins. Co.*, No. 4:07-cv-00071, 2013 WL 2430474, at *3 (W.D. Ky. 2019)). Following argument, Erie moved for leave to file a sur-reply on this point [DN 46]. The Court grants the motion, but the collateral-estoppel consequences of that criminal judgment cannot overcome the lack of a justiciable case or controversy under the Article III and the Declaratory Judgment Act, as explained below.

3

alternative reading apparent to the Court: the relevant policy provisions say it will cover only "anyone we protect," which is defined as Moore, her relatives, and those with permission to use the vehicle. Auto Policy at 8, Catastrophe Policy at 6. Even at oral argument, Victim-Defendants could not muster any countervailing interpretation (though they didn't concede the point). Arg. Tr. at 28:22–33:1.

The relevant point from the Victim-Defendants' perspective, rather, is that no case or controversy exists here. After Welsh was convicted of receiving stolen property, the state court dismissed Erie as a defendant. Notice of State Court Dismissals [DN 26]. And the Victim-Defendants have repeatedly told Erie that they aren't seeking to recover against it based on coverage from either of the policies. *See, e.g.,* Moore Law Group Letter [DN 39-1] at 2. To be sure, they haven't gone as far as to offer Erie either a full release or a consent order, and haven't identified any reason why they wouldn't—leaving one to speculate whether they might reverse course in state court after the threat of Erie's first-filed federal suit has passed.[3] But the Victim-Defendants *did* send Erie a letter stating, without equivocation, that "none of the State Court Plaintiffs will be making a claim for coverage for claims against Ms. Moore or Shawn Welsh under either policy." *Id.* The Defendants have repeatedly asked the Court to dismiss the lawsuit in reliance on this representation. *Id.* No party has been able to articulate a concrete situation in which the Victim-Defendants *would* be able to wriggle out from under this representation should it induce the Court to dismiss the case on that basis.

**C.     This Dispute Falls Outside the Court's Jurisdiction and Is Inappropriate for a Declaratory Judgment**

Under Article III of the United States Constitution, this Court may adjudicate only "cases" and "controversies." U.S. Const., Art. III, § 2; *see Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007) ("Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies'. . . ."). As the Sixth Circuit has long made clear, this constitutional limitation on the power of the judicial branch applies to suits filed under the Declaratory Judgment Act. *See Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 456–57 (6th Cir. 2021) ("To get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III."); *Detroit, Toledo & Ironton R. Co. v. Consol. Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985) ("[T]he 'case or controversy' requirement applies to declaratory judgment actions . . . .").

The purpose of a declaratory judgment, of course, is often to anticipate and avoid actual litigation over a party's rights or duties. *See Severe Recs., LLC v. Rich*, 658 F.3d 571, 580 (6th Cir. 2011) ("[T]he central purpose of the Declaratory Judgment Act ... is to provide the opportunity to clarify rights and legal relationships without waiting for an adversary to file suit."). And for that reason, doubt persisted for decades about whether a request for a declaration fell within a federal court's limited jurisdiction. *See* 10B Wright & Miller, *Federal Practice & Procedure* § 2753 (4th ed. 2016). The Supreme Court eventually resolved those doubts by concluding that a declaratory-judgment request implicates a "controversy" within the meaning of Article III when the parties' relationship is sufficiently controversial: "Basically, the question in each case is whether the

---

[3] Such an about-face would be cheeky at best, and perhaps doomed. If the Victim-Defendants prevailed here after persuading the Court that no case or controversy existed because they wouldn't pursue Erie, but then they *did* pursue Erie, they would do so at significant risk of being held to their prior representation by the constraints of the judicial estoppel doctrine. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). That equitable authority exists precisely to avoid the sorts of tactical evasions that Erie seems to suspect Victim-Defendants will attempt. *Id.*

facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (citing *Haworth*, 300 U.S. at 239–42).

How should courts (and potential declaratory-judgment plaintiffs) distinguish a justiciable controversy from "a difference or dispute of a hypothetical or abstract character; from one that is academic or moot"? *Haworth*, 300 U.S. at 240–41. "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citations omitted). So there must be some "threatened injury," even if it is not "absolutely 'immediate' and 'real.'" *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 845 (6th Cir. 1994).

A common reason for seeking a declaration is to settle what a party's obligations will be under a contract. But if the contract is an insurance policy, and if a counterparty has asserted that it does not or will not seek coverage under that policy, courts have held that there is no controversy under Article III. Numerous decisions support this presumption against jurisdiction,[4] which Erie cannot overcome here.

The Victim-Defendants did not argue, at the outset, that this Court lacked jurisdiction over Erie's complaint. At that point they had sued Erie in state court, and their gripe with this case was its premature and potentially duplicative role. But things changed since the state court convicted Welsh of receiving stolen property (that is, the truck Moore owned and Erie insured), since the state court dismissed Erie as a party, and—most importantly—since the Victim-Defendants sent Erie a letter saying they weren't and wouldn't seek to recover insurance benefits under the Moore policies. They have confirmed both in written communications with Erie and during oral argument that "none of the State Court Plaintiffs will be making a claim for coverage for claims against Ms. Moore or Shawn Welsh under either policy." Moore Law Group Letter at 1. They also say, "we will ***not*** be making a claim for coverage under Erie's policies for Mr. Welsh." *Id.* (emphasis in original). At argument, counsel stated unequivocally that the Victim-Defendants do not intend to seek coverage under the Erie policies. Arg. Tr. 7:21–23, 15:3–5.

This unilateral disarmament renders Erie's declaratory-judgment suit merely hypothetical and academic. The Victim-Defendants' representations to Erie and to this Court mean they lack either a

---

[4] *See, e.g.. State Auto Mut. Ins. Co. v. Hancock*, No. 1:19-cv-43, 2019 WL 6352650, at *4 (W.D. Ky. Nov. 27, 2019) (absent "a state court action—or even the threat of such an action—to create a case and controversy of sufficient immediacy and reality …. a ruling regarding the Policy coverage or exclusion would constitute an impermissible advisory opinion"); *Am. Alternative Ins. Corp. v. Davis*, No. 2:07-0340, 2008 WL 11381495, at *2 (S.D. W. Va. June 11, 2008) (dismissing two defendants from a declaratory-judgment action because they "made no claim for indemnity or payment under the insurance policies at issue" in the insurance company's declaratory-judgment complaint); *Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-cv-560, 2014 WL 811993, at *3 (D. Colo. Mar. 3, 2014) (no case or controversy because the defendant submitted a declaration that it was not "challenging [the insurance company's] denial of coverage" in the underlying lawsuit); *Safeco Ins. Co. of Am. v. Smith*, No. 4:17-cv-1552, 2018 WL 513668, at *3 (E.D. Mo. Jan. 23, 2018) ("Where, as here, an insured withdraws a claim for coverage, there is no longer a case or controversy.") (collecting cases); *Selective Ins. Co. of S.C. v. Phusion Projects, Inc.*, 836 F. Supp. 2d 731, 733 (N.D. Ill. 2011) (no Article III controversy existed because defendants withdrew "their tender of defense and request for indemnification").

5

current "claim of a present, specific right" or an "ongoing demand" for coverage. *Phusion Projects, Inc.*, 836 F. Supp. 2d at 734. As in *Phusion Projects*, Erie "is not faced with the kind of 'dilemma' that the Declaratory Judgment Act sought to ameliorate: it is not presently required to take any action with respect to the Underlying Claims, or to refrain from taking any action, to eliminate the risk of liability." *Id.* Erie cannot hope to gain from this Court any clarity in its legal obligations that would affect its real-world conduct. Indeed, based on Victim-Defendants' representations, "a judgment declaring that there is no such coverage under [the] policy would not change or affect the behavior of [the defendants] toward [the declaratory-judgment plaintiff]." *Dish Network*, 2014 WL 811993, at *3. Other than its effect on potential future litigation, Erie couldn't identify anything it would do differently if this Court issued the declaration it sought, or anything it would've done differently if it received the declaration at the outset of this case. Arg. Tr. 12:19–14:13. *See Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("[W]here a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint.").

Here the insurer appears to seek insurance of its own: protection against the risk that some future court might decide, under unknown circumstances and for unknown reasons, that Erie is responsible in some unknown manner for damages caused by Welsh's theft and use of Moore's car. *See* Arg. Tr. 11:5–7. But the Constitution doesn't authorize federal courts to issue opinions that may or may not ripen in the future; we are limited to controversies that have already ripened. And Erie's request—even if it was ripe at some point in the past—is not an actual, live controversy today. *See, e.g.*, *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed.").

Welsh's role in this saga is notable, as is his absence from this litigation. Erie admitted at argument that its main concern is that a future verdict against a judgment-proof Welsh might lead him or his tort victims to seek indemnification or some other form of recovery through the Moore policies. Arg. Tr. 11:5–14. Nothing indicates Welsh has requested a defense or indemnity from Erie. *See Davis*, 2008 WL 11381495, at *2 (dismissing two defendants who "made no claim for indemnity or payment under the insurance policies at issue"). And Welsh's absence from the federal and state civil litigation, Arg. Tr. at 16:15–18, offers further reason to doubt the appropriateness of a declaratory judgment here. According to the Restatement, "[i]f a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared … *even as to a party who makes no appearance in the action*." Restatement (Second) of Judgements § 33 (1982) (emphasis added). For related reasons, including the risk of inconsistent judgments, courts have declined to enter default judgments in multi-defendant cases involving an absent defendant. *See, e.g.*, *Cincinnati Ins. Co. v. Heitbrink*, No. 3:15-cv-3352, 2017 WL 349312, at *2 (C.D. Ill. Jan. 24, 2017) (court declined to enter default judgment against absent, incarcerated defendant despite actual controversy between insurer and injured in multi-defendant declaratory-judgment case); *Auto-Owners Ins. Co. v. Davidson*, No. 1:17-cv-83, 2017 WL 5035085, at *3 (E.D. Tenn. Nov. 1, 2017) ("When an underlying state-court suit poses the possibility of inconsistent rulings, the district courts in this circuit and others have denied default judgments in declaratory judgment actions involving insurance policies."). Welsh's long-term absence, and the ongoing development of the associated state-court lawsuits, make Erie's concern with hypothetical indemnification ever more contingent. *See Phusion Projects*, 836 F. Supp. 2d at 733–34 ("[W]here 'future contingencies . . . will determine whether a controversy ever actually becomes real,' courts 'should focus on the practical likelihood that the contingencies will occur.'") (citation omitted).

To the extent Erie's adversity is at its most concrete relative to Welsh, as Erie appears to admit, Arg. Tr. 12:19–14:13, the purported dispute between those two sides is simultaneously at its most hypothetical. *See Hillard v. First Fin. Ins.*, 968 F.2d 1214 (6th Cir. 1992) ("A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop."). As other courts have recognized, and Erie appears to concede, a "plaintiff suffers no discernable prejudice" because "it must wait and see if it will be called upon to defend and indemnify" someone in Welsh's position. *Phusion Projects*, 836 F. Supp. 2d at 734. The absence of a concrete dispute between Erie and the absent Welsh only underscores the lack of an actual case or controversy under Article III.

\* \* \*

This analysis of Erie's inchoate claim ultimately ends where the Victim-Defendants' criticism began: even assuming an actual controversy existed, the Court would decline to exercise its discretion to hear Erie's request for a declaratory judgment. The Sixth Circuit has spoken to the law's disfavor for anticipatory declaratory-judgment actions in the insurance-indemnity context:

> We have repeatedly held in insurance coverage diversity cases that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." Further, "[s]uch actions ... should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created."

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812–13 (6th Cir. 2004) (citations omitted).

The case is simply too inchoate and contingent for this Court's interpretation of the Moore policies to meaningfully clarify the legal rights and obligations of any among the lengthy cast of characters who continue to litigate in other forums. The Sixth Circuit in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) enumerated five factors for courts to consider when determining whether to exercise discretion to take up a case under the Declaratory Judgment Act:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court of Appeals has, at times, boiled down these five specific factors to three essential principles: "efficiency, fairness, and federalism." *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

The first and second factors cuts against Erie, and definitively so. Would "the declaratory action … settle the controversy"? It would not. Would it "serve a useful purpose in clarifying the [parties'] legal relations"? No—for all the same reasons discussed above regarding why the parties' legal relations are not even in an adverse posture at this point. Welsh remains absent and the Victim-Defendants say they're pursuing the municipalities, not the policies. Arg. Tr. 16:7–17:4; *Grand Trunk*, 745 F.3d at 326.[5]

The remaining factors likewise show how a decision from this court would fail to serve efficiency, fairness, or federalism. *Hoey*, 773 F.3d at 759. The third is merely neutral: the Defendants argue Erie is racing for res judicata, but the Sixth Circuit is "reluctant to impute an improper motive to a plaintiff where"—as here—"there is no evidence of such in the record." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008). But the fourth and fifth factors both tilt against Erie: any fact-finding and assignment of responsibility by this Court could only create "friction" with the ongoing state-court civil case and criminal appeal. And that friction is unnecessary because an alternative remedy—the declaratory-judgment claim already asserted under state law—is available and at least equally effective. Plus, Erie itself could pursue an indemnity action at the conclusion of the state-court tort case, should the contingencies it now fears materialize by then. *See Grand Trunk*, 746 F.2d at 326–27.

Declaratory judgment actions are an important tool that legislatures have granted in order to make litigation more timely and useful. But this case would do neither. The critical defendant is absent, the underlying dispute is in state court, this case was filed in anticipation of that state-court litigation, this court's ruling would not resolve any dispute but instead remain contingent on state-court developments, and the potential for recovery against Erie remains entirely hypothetical. For all these reasons, "the factual and procedural postures of this case make exercise of jurisdiction particularly inappropriate." *Bituminous Coal*, 373 F.3d at 813.

## ORDER

The Court grants Victim-Defendants' motion to dismiss Erie's complaint for lack of jurisdiction given the absence of a justiciable case or controversy [DN 35]. In the alternative, the Court grants the motion to dismiss, given the Court's discretion under the Declaratory Judgment Act [DNs 15, 21]. The Court grants Erie's motion for leave to file a sur-reply [DN 46]. Finally, the Court denies the parties' remaining motions [DNs 25, 27, 40] as moot. In the event the parties' dispute

---

[5] Whether this factor refers to the ultimate controversy or the case before the district court is unclear. *See Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 610 (E.D. Ky. 2019). One line of decisions has "held that this factor is met if the declaratory action can settle the insurance coverage controversy presented, even though it will not resolve the underlying state court action." *Auto Owners Ins. Co. v. Trip Cat, LLC*, 444 F. Supp. 3d 764, 769 (E.D. Ky. Mar. 17, 2020) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). A second line, however, has "held that although such declaratory actions might clarify the legal relationship between the parties, they ultimately fail factor one analysis by failing to settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)). Given the absence of Welsh, an indemnity claim, a damages claim against Erie, or even a demand against Erie, the declaration Erie seeks wouldn't settle anything.

becomes ripe and justiciable notwithstanding the Victim-Defendants' representations, the Court notes that this dismissal is without prejudice.

cc: counsel of record

Benjamin Beaton, District Judge
United States District Court

July 30, 2021